1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11   MICHAEL JACQUES,                    Case No.  1:16-cv-01289-DAD-SAB (PC)

12              Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                         REGARDING DEFENDANTS VASQUEZ'S,
13        v.                             ATHIE'S, ARO'S, GARZA'S, RAZO'S,
                                         AND LOPEZ'S MOTION FOR SUMMARY
14   J. LOPEZ, JR., et al.,              JUDGMENT

15              Defendants.              (ECF No. 37)

16                                       **TWENTY-ONE (21) DAY DEADLINE**

17

18        Plaintiff Michael Jacques is a state prisoner appearing *pro se* and *in forma pauperis* in this

19   civil rights action pursuant to 42 U.S.C. § 1983.

20        Currently before the Court is Defendants Aro's, Athie's, Garza's, Lopez's, Razo's, and

21   Vasquez's motion for summary judgment, filed on December 17, 2018.  (ECF No. 37.)

22                                       **I.**

23                      **RELEVANT PROCEDURAL HISTORY**

24        This action is proceeding on Plaintiff's complaint, filed on August 31, 2016, against

25   Defendants P. Athie, J. Garza, J. Lopez, Jr., and R. Razo for excessive force in violation of the

26   Eighth Amendment, against Defendant T. Vasquez for failing to intervene during the alleged use

27   of excessive force in violation of the Eighth Amendment, and against Defendant G. Aro for

28   deliberate indifference to a serious medical need in violation of the Eighth Amendment.  (ECF No.

                                         1

13.)

On October 2, 2017, Defendants Aro, Athie, Garza, Lopez, Razo, and Vasquez filed an answer to Plaintiff's complaint. (ECF No. 19.) On October 11, 2017, the Court issued the discovery and scheduling order. (ECF No. 20.)

As previously stated, on December 17, 2018, Defendants filed a motion for summary judgment. (ECF No. 37.) On January 17, 2019, the Court issued an order requiring Plaintiff to file an opposition or a statement of non-opposition to Defendants' motion for summary judgment within twenty-one days. (ECF No. 38.) On February 5, 2019, the Court granted Plaintiff an additional thirty days to file an opposition to Defendants' motion for summary judgment. (ECF No. 40). On February 27, 2019, Plaintiff filed an opposition to Defendants' motion for summary judgment. (ECF No. 41.) On March 7, 2019, Defendants filed a reply. (ECF No. 42.) Accordingly, Defendants' motion for summary judgment is deemed submitted for review, without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless,

2

*Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be

3

drawn. <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A.      Summary of Plaintiff's Complaint**

The incidents alleged in the complaint occurred while Plaintiff was housed at North Kern State Prison ("NKSP"). (Complaint, ECF No. 1, at 1.)[1]

On August 24, 2015, Plaintiff was transferred from the Los Angeles County Jail to NKSP. (Compl., ¶ 19.) Upon arrival at the receiving and release section of NKSP, Plaintiff was strip searched and then placed in mechanical restraints pursuant to NKSP's policy and procedure. (<u>Id.</u>) Registered Nurse B. Dennis Barrios began interviewing Plaintiff about his medical health and medications. (<u>Id.</u>) After documenting Plaintiff's contacts, contact case, and contact solution, Nurse Barrios asked Plaintiff where Plaintiff's medicated lotion was. (Compl., ¶ 20.) Correctional Officer J. Gonzalez overheard the question and stated, "Oh I think (Defendant) Correctional Officer J. Lopez, Jr. threw away the lotion but I'll ask him." (<u>Id.</u>) After Correctional Officer Gonzalez asked Defendant Lopez about the medicated lotion, Defendant Lopez stated: "This aint (<i>sic</i>) no fucking medicated lotion. This is fucking regular lotion." (<u>Id.</u>) Plaintiff replied: "This aint (<i>sic</i>) no fucking regular lotion[.] This is fucking medicated lotion." (<u>Id.</u>) Defendant Lopez responded: "Who the fuck do you think you are?" (<u>Id.</u>) Plaintiff responded back: "Who the fuck do you think you are?" (<u>Id.</u>)

---

[1] References herein to page numbers are to the page numbers in the Court's ECF pagination headers.

Plaintiff was nearly completed with the medical evaluation when Nurse Barrios asked Plaintiff to retrieve the medicated lotion so that the Nurse could see it and document it for the doctor for a later scheduled evaluation. (Compl., ¶ 21.) As Plaintiff walked out of the medical portion in mechanical restraints, Defendant Lopez struck Plaintiff twice in the right side of his facial area and once on the left side of his facial area, and then slammed Plaintiff on the ground. (Compl., ¶ 22.) While Plaintiff was on the ground, Defendant Lopez choked Plaintiff, which cut off Plaintiff's air supply, and placed himself on Plaintiff's upper back after Plaintiff told Defendant Lopez several times that he could not breathe. (Compl., ¶ 23.)

While recovering on the floor from being dazed due to Defendant Lopez's actions, Plaintiff was stepped on, stomped on, kneed, and punched by Defendants who were later identified by incident reports. (Compl., ¶ 24.) Defendant Correctional Sergeant T. Vasquez was the supervisor and bystander present during the unlawful beating and, even though he had a "realistic opportunity" to prevent it, he did nothing to stop it. (Id.) Defendant Vasquez ordered Defendant Correctional Officer R. Razo to receive leg restraints and to place them on Plaintiff. (Id.) Defendant Razo placed the leg restraints on Plaintiff so tightly that the restraints restricted blood flow, cut into Plaintiff's skin, and caused Plaintiff's legs to become numb. (Id.) Defendant Vasquez also ordered correctional officers to transition Plaintiff from being handcuffed in front of his body to being handcuffed behind his body. (Id.) Defendant Correctional Officer P. Athie took hold of Plaintiff's left hand, Defendant Correctional Officer J. Garza took hold of Plaintiff's right hand, and Plaintiff's hands were moved to behind his back. (Id.) After the handcuff transition was completed, the handcuffs on Plaintiff's wrists were so tight that the handcuffs restricted Plaintiff's blood flow, cut into Plaintiff's skin, and caused Plaintiff's hands to go numb. (Id.)

While Plaintiff was in a holding cage, Nurse Barrios documented some, but not all, of Plaintiff's injuries on a CDCR 7219 form. (Compl., ¶ 26.) After spending 8 hours in a holding cage with no sitting stool, sink, or toilet, Plaintiff refused to be transferred until all of his injuries were properly documented. (Compl., ¶ 27.) Defendant Registered Nurse G. Aro then documented the following injuries on Plaintiff: the right side of Plaintiff's head and earlobe were swollen, the right side of Plaintiff's face was swollen, there was a cut on the inside of Plaintiff's mouth on the

right side, there was a reddened area on Plaintiff's right inner arm, there was a swollen area on Plaintiff's right inner leg, Plaintiff's left face had a bruised or discolored area and a swollen area, and Plaintiff's left elbow had a swollen area. (Id.) Further, while Plaintiff requested medical treatment due to being in pain, Defendant Aro did not offer, or give, Plaintiff any medical treatment. (Id.)

Plaintiff alleges that Defendants Lopez, Athie, Garza, Razo, and Vasquez conspired to file false and intentionally misleading official incident reports (CDCR 837 forms) against Plaintiff in an attempt to cover up and/or justify their excessive use of force. (Compl., ¶¶ 51, 53-54.)

Plaintiff asserts that, due to Defendants' actions and/or inactions, he received injuries to the right side of his head, right earlobe, right and left sides of his mouth, the inside of his right arm, the inside of his right leg, left elbow, right and left wrists, right ankle, and his legs just above his right and left ankles. (Compl., ¶¶ 36, 58.) He also suffered dizziness and headaches. (Compl., ¶ 52.) Finally, Plaintiff asserts that the violation of his rights also caused him to suffer emotional and psychological distress and pain, severe depression, humiliation, and fear. (Compl., ¶¶ 36, 58.)

**B.      Statement of Undisputed Material Facts ("UMF")[2]**

1.      Plaintiff Michael Jacques, CDCR # AX-5885, is a state prisoner in the custody of the California Department of Corrections and Rehabilitation. At all times relevant to this action, Plaintiff was housed at North Kern State Prison ("NKSP"). (Complaint, ECF No. 1, at 1.)

2.      At all times relevant to this action, Defendants were employed by the California Department of Corrections and Rehabilitation and worked at NKSP in the following positions: Defendant Vasquez was a Correctional Sergeant; Defendants Athie, Razo, Garza, and Lopez worked as Correctional Officers; and Defendant Aro was a Registered Nurse. (Compl., at 2, 3.)

3.      On August 24, 2015, Plaintiff arrived at NKSP as a new felony commitment from

---

[2] Plaintiff attempts to dispute UMF Nos. 10, 11, 13, and 24 with a general statement that a genuine issue of material fact exists in each, and all, of those facts, entitling Plaintiff to a denial of the Defendants' motion for summary judgment. However, since Plaintiff's general statement is unsupported by any evidence, the Court finds that UMF Nos. 10, 11, 13 and 24 are undisputed.

1  the Los Angeles County Jail.  (Defendants' Exhibit A, ECF No. 37-3, at 13.)

2  4.  Newly committed inmates arriving at the prison are processed through Receiving
3      and Release ("R&R").  (Defendants' Exhibit B, ECF No. 37-3, Declaration of C.
4      Arce, ¶¶ 2-3, 6.)

5  5.  Upon arrival, if an inmate is being received from a county jail, the inmate's restraints
6      are switched from county to state restraints.  (Arce Decl., ¶ 4.)

7  6.  The inmate is then interviewed by a sergeant regarding the inmate's background
8      information, gang status, safety concerns, and verifies the inmate's custody
9      designation.  (Arce Decl., ¶ 5.)

10  7.  Then, the inmate is brought into R&R, where the inmate is "stripped out," provided
11     with state-issued undergarments, and put through a body scanner.  After that, the
12     inmate is provided with paperwork to fill out.  (Arce Decl., ¶¶ 6-8.)

13  8.  From there, the inmate is placed in a large holding tank, until he is taken to an office
14     where a sergeant conducts a one-on-one Prison Rape Elimination Act interview.
15     (Arce Decl., ¶¶ 9-10.)

16  9.  The inmate is photographed and fingerprinted, and his property is searched by an
17     officer.  The inmate is given a state-issued shirt and pants.  The inmate is permitted
18     to keep his allowable property, but any non-allowable property is permitted to be
19     sent home or donated.  Next, the inmate is escorted to a medical room for an
20     evaluation by medical staff.  (Arce Decl., ¶¶ 11-14.)

21  10.  On August 24, 2015, Officer Gonzales escorted Plaintiff to the medical room for an
22      evaluation by medical staff.  (Defendants' Exhibit C, ECF No. 37-3, at 51.)

23  11.  On request from medical, Officer Gonzales handcuffed Plaintiff with his arms in
24      front of his body.  (Id. at 51, 54.)

25  12.  Officer Gonzales asked Officer Lopez, who was conducting an inventory of
26      Plaintiff's property, if he had seen Plaintiff's bag of medicine.  Officer Lopez
27      responded that he had placed all of Plaintiff's medicine in the medical officer for
28      review by RN Barrios.  (Id. at 22.)

7

13. Officer Lopez advised Plaintiff that any food or cosmetics from county jail were not allowable property. (Id. at 28.)

14. Officer Gonzales then asked Officer Lopez if he had seen Plaintiff's lotion. Officer Lopez stated that he had thrown the lotion away because it was not a medical item. (Defendants' Exhibit D, ECF No. 37-3, Declaration of J. Lopez, ¶ 8.)[3]

15. The lotion bottle did not have a prescription label. (Id. at ¶ 6.)[4]

16. Additional responding staff, including Sergeant Vasquez and Officers Athie, Razo, and Garza, arrived in the area. (Defendants' Exhibit C, ECF No. 37-3, at 39, 43, 47, 65.)[5]

17. Sergeant Vasquez noticed that Officer Lopez had an injury to his hand that was actively bleeding, and ordered Lopez away from the area. (Id. at 39.)

18. Sergeant Vasquez ordered Officer Razo to get leg restraints. Officer Razo obtained the leg restraints and placed them on Plaintiff's ankles. (Id. at 10, 65.)

19. Sergeant Vasquez ordered Officers Athie and Garza to transition the handcuffs from the front of Plaintiff's body to the back. (Id. at 10.)

20. Officers Athie and Garza then escorted Plaintiff to a holding cell. (Id. at 15.)

21. Following the use of force incident, Plaintiff was seen by Dr. E. Flores. Dr. Flores noted that that Plaintiff had asthma medication, his contact lenses, and contact lens solution, which he was allowed to keep on his person. Dr. Flores also noted a wound

---

[3] Plaintiff disputes this fact, stating that it is unknown what Defendant Lopez did with the lotion because, in his response to Plaintiff's Interrogatory No. 19, Officer Lopez stated that he "allowed medical staff to determine whether Plaintiff's lotion was medicated, the Sergeant looked at it and gave it to medical to evaluate." (Opposition, ECF No. 41, at 59.) However, since Officer Lopez's comment is in response to a question about whether Officer Lopez gave medical personnel the opportunity to evaluate the lotion "prior to discarding that item in the trash[,]" Officer Lopez's response to Plaintiff's Interrogatory No. 19 is not evidence that Officer Lopez did not throw away Plaintiff's lotion. Hence, the Court finds that UMF No. 14 is undisputed.

[4] Plaintiff disputes this fact, stating that Officer Lopez's declaration states that the lotion had been issued to Plaintiff by the Los Angeles County Jail. However, the fact that the lotion had been issued by the Los Angeles County Jail is insufficient to demonstrate that there was a prescription label on the bottle. Therefore, the Court finds that UMF No. 15 is undisputed.

[5] Plaintiff disputes UMF Nos. 16, 17, 18, 19, and 20 based on the facts as alleged in his Complaint and the facts that he testified to at his deposition. However, since the facts alleged in Plaintiff's Complaint and his deposition testimony do not contradict UMF Nos. 16, 17, 18, 19, and 20, the Court finds that UMF Nos. 16, 17, 18, 19, and 20 are undisputed.

to Plaintiff's right leg, for which the doctor issued wound care orders. Dr. Flores did not note any other injuries on Plaintiff, but Dr. Flores prescribed Plaintiff "Ibuprofen 400 mg P.O. TID PRN for pain." (Defendants' Exhibit G, ECF No. 37-3, at 111-113.)[6]

22. Plaintiff was seen by RN Barrios at 2:41 p.m. Nurse Barrios noted that Plaintiff had a cut to his mouth, a cut to his left wrist, and indentation marks on his wrists and ankles. Nurse Barrios also noted that Plaintiff had an old open wound on the back of his right leg. (Id. at 114.)[7]

23. At 8:05 p.m., RN Aro was escorted to Plaintiff's holding cell by Sergeant Vasquez. Nurse Aro noted that Plaintiff had a cut, swollen, and bruised lip, swelling to the right side of the head, the right groin area, and the left elbow, as well as a reddened area on the inside of his right arm. (Id. at 125.)

24. Nurse Aro's license does not allow her to issue pain medication without an order from a physician. (Defendants' Exhibit H, ECF No. 37-3, Declaration of G. Aro, ¶ 7.)

25. Plaintiff was transferred to Mule Creek State Prison on August 26, 2015. (Defendants' Exhibit A, ECF No. 37-3, at 4.)

26. On September 2, 2015, Plaintiff was issued a Rules Violation Report, for the Division B offense of Battery on a Peace Officer Resulting in the Use of Force. (Defendants' Exhibit C, ECF No. 37-3, at 69.)

27. The disciplinary hearing was held on October 14, 2015, with Lieutenant W. Oxborrow acting as the Senior Hearing Officer. (Id. at 70.)

---

[6] Plaintiff "disputes fact [21] that the only injuries in the initial exam after the incident were a wound to the leg." (ECF No. 41, at 15.) However, UMF No. 21 does not state that Plaintiff's only injury after the incident was a right leg wound. UMF No. 21 states that Dr. Flores did not note any other injuries on Plaintiff, other than a right leg wound. Since Plaintiff has failed to provide the Court with evidence that Dr. Flores noted any other injuries on Plaintiff's body, the Court finds that UMF No. 21 is undisputed.

[7] Plaintiff "disputes fact [22] in that Barrios did not note all of Plaintiff's wounds and injuries resulting from the assault on Plaintiff as a second exam done later revealed … additional injuries[.]" (ECF No. 41, at 15.) However, Plaintiff is not disputing the actual facts listed in UMF No. 22. Rather, Plaintiff is disputing an inference that can be drawn from the existence of that fact. Therefore, the Court finds that UMF No. 22 is undisputed.

28. At the disciplinary hearing, Plaintiff pled not guilty and stated, "I did not assault staff." (Id. at 71.)

29. Lieutenant Oxborrow reviewed the documentation related to the rule violation. Based on a preponderance of the evidence, Lieutenant Oxborrow found Plaintiff guilty of violating California Code of Regulations, title 15, § 3005(d)(1), specifically "battery on a peace officer resulting in the use of force." (Id. at 71-72.)

30. Plaintiff was assessed a 150-day credit loss, and informed that there was no credit restoration for this Division B offense. (Id. at 73.)

31. On September 3, 2015, Plaintiff filed a California Department of Corrections and Rehabilitation 602 inmate appeal alleging excessive force, tight leg restraints, and not being provided with medical attention. (Id. at 82, 84, 86.)

32. Plaintiff's 602 appeal was processed as a staff complaint, which bypassed the first level of review. (Id. at 82-83, 59.)

33. On September 23, 2015, Plaintiff's 602 appeal was partially granted at the second level of review, but the appeal inquiry found that staff did not violate CDCR policy with respect to the issues raised in Plaintiff's appeal. (Id. at 88-89.)

34. On March 4, 2016, Plaintiff's 602 appeal was denied at the third, or Director's, level of review. (Id. at 97-98.)

## C.  Analysis of Defendants' Motion

### 1.  Favorable Termination Rule

Defendants Athie, Garza, Lopez, Razo, and Vasquez contend that Plaintiff's claims for excessive force and failure to intervene are barred by the favorable termination rule.

As a general matter, prisoners may not challenge the fact or duration of their confinement in a § 1983 action. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or Heck bar, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement – either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id. at 81 (italics in original). Thus,

"a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."  Id. at 81-82.  In the prison disciplinary context, the favorable termination rule or Heck bar applies if the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits[,]" Edwards v. Balisok, 520 U.S. 641, 646 (1997), and if the restoration of those credits "necessarily" would "affect the duration of time to be served[.]"  Muhammad v. Close, 540 U.S. 749, 754 (2004) (*per curiam*).

Defendants have the burden of demonstrating that the favorable termination rule or Heck bars Plaintiff's § 1983 claims.  See Sanford v. Motts, 258 F.3d 1117, 1119 (9th Cir. 2001) (noting that it was defendants' burden to establish that Heck defense applies to plaintiff's claims). Therefore, in order to establish that part, or all, of Plaintiff's claims are barred by the favorable termination rule in the prison disciplinary context, Defendants must prove: (1) that Plaintiff's success on the merits of his claim or claims would directly or indirectly question the validity of any prison disciplinary proceedings in which Plaintiff was deprived of good-time credits; and (2) that restoration of Plaintiff's good-time credits would necessarily affect the length of time that Plaintiff must serve in custody.  Muhammad, 540 U.S. at 754; Edwards, 520 U.S. at 646.

Here, it is not clear that Plaintiff's conviction for "Battery on a Peace Officer Resulting in the Use of Force" via prison disciplinary proceedings and his resulting loss of 150 days of good-time credits would *necessarily* affect the length of time that Plaintiff must serve in custody.  See Nettles v. Grounds, 830 F.3d 922, 929 n.4 (9th Cir. 2016).  Defendants argue that Plaintiff's disciplinary conviction has affected the length of his sentence because "Plaintiff received a 150-day credit loss, and those credits are not subject to restoration."  (ECF No. 37-1, at 13.)  However, the Court does not have any evidence before it regarding the nature of Plaintiff's sentence, *i.e.*, whether Plaintiff is serving a determinate sentence, an indeterminate sentence with the possibility of parole, or an indeterminate sentence without the possibility of parole.  If Plaintiff is serving an indeterminate sentence without the possibility of parole, the restoration of any good-time credits

11

would not affect the length of time that Plaintiff would have to serve in custody. Reed v. CSP-LAC, No. CV 12-10727 VAP (AS), 2018 WL 5974322, at *3 (C.D. Cal. May 9, 2018) (stating that prisoner's Eighth Amendment claim was not barred by Heck because, since prisoner was sentenced to life without the possibility of parole, success on his Eighth Amendment claim would not affect the overall length of the prisoner's sentence). Further, if Plaintiff is serving an indeterminate sentence with the possibility of parole and the date on which Plaintiff became initially eligible for parole has already passed, the restoration of any good-time credits may not affect the length of Plaintiff's confinement. Wilkerson v. Wheeler, 772 F.3d 834, 840 (9th Cir. 2014) (stating that any loss of credits for a prisoner serving an indefinite life sentence and whose date at which they are initially eligible for parole has passed does not affect the length of the prisoner's sentence); see also Nettles, 830 F.3d at 934-35 (stating that, since expungement of a challenged disciplinary violation would not necessarily lead to a grant of parole, a prisoner's claims challenging prison disciplinary proceedings would not necessarily lead to earlier release from confinement and, thus, had to be brought in a § 1983 action).

Thus, Defendants have not established the second element of the favorable termination defense – that restoration of Plaintiff's good-time credits would necessarily affect the length of time that Plaintiff must serve in custody. Consequently, Defendants have not met their burden of proving that Plaintiff's excessive force and failure to intervene claims are barred by the favorable termination rule. Accordingly, the Court recommends denying Defendants' motion for summary judgment with respect to the favorable termination rule.

## 2. Excessive Force and Failure to Intervene

Defendants Athie, Garza, Lopez, and Razo contend that they are entitled to summary judgment on Plaintiff's claim for excessive force in violation of the Eighth Amendment because they only used the force necessary to restore order following Plaintiff's assault on Defendant Lopez. Defendant Vasquez contends that he is entitled to summary judgment on Plaintiff's claim for failure to intervene because, since he did not see any excessive force being used against Plaintiff, he had no duty to intervene.

"[W]henever prison officials stand accused of using excessive physical force in violation of

12

the Cruel and Unusual Punishments Clause, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  In making this determination, the court may evaluate (1) the extent of any injury suffered by Plaintiff; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible prison officials; and (5) any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force causes should be granted sparingly."  Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (citation omitted).

Further, a prison official may be liable under § 1983 if he is aware that a fellow official is violating a prisoner's constitutional rights, but fails to intervene.  See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.") (citation omitted); see also Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n. 3 (1st Cir. 1990) ("An officer who is present at the scene who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance.").  A failure to intervene can support an excessive force claim where the bystander-officers had a realistic opportunity to intervene, but failed to do so.  Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham, 229 F.3d at 1289.

According to the evidence submitted by Defendants Athie, Garza, Lopez, Razo, and Vasquez, on August 24, 2015, Officer Gonzales escorted Plaintiff to the medical room for an evaluation by medical staff.  (UMF No. 10.)  On request from medical, Officer Gonzales handcuffed Plaintiff with his arms in front of his body.  (UMF No. 11.)  Officer Gonzales asked Defendant Lopez if he had seen Plaintiff's lotion and Defendant Lopez stated that he had thrown it away because it was not medicine.  (UMF No. 14.)  Plaintiff became upset, claiming that the lotion was

medicated. (Defendants' Exhibit D, ECF No. 37-3, Declaration of J. Lopez, ¶ 9.) Plaintiff then rose from his seated position in the medical room, and, while Officer Gonzales gave Plaintiff several verbal commands to sit back down, Plaintiff did not comply with the orders. (Id. at ¶ 10.) Plaintiff then quickly advanced on Defendant Lopez and, when Plaintiff got too close, Defendant Lopez pushed Plaintiff back and ordered Plaintiff to get inside holding cell number 11. (Id. at ¶ 11.) Plaintiff refused the direct order and approached Defendant Lopez again. (Id.) As Plaintiff was moving towards Defendant Lopez, Plaintiff, who was cuffed in front of his body, raised his arms over his head and struck Defendant Lopez in the chest. (Id.) Since Defendant Lopez did not have the proper distance to draw his pepper spray or to utilize his baton, Defendant Lopez, who believed that Plaintiff would have struck him again, hit Plaintiff across the face. (Id.) Defendant Lopez then took Plaintiff to the ground using a strength hold. (Id. at ¶ 18.) Officer Gonzales and Defendant Lopez used their body weight and holds to control Plaintiff, who attempted to get back up off the ground, until responding staff arrived. (Id. at ¶ 19.)

Responding staff, including Defendants Vasquez, Athie, Razo, and Garza, arrived in the area after Officer Monge sounded his personal alarm. (UMF No. 16; Defendants' Exhibit C, ECF No. 37-3, at 61.) Defendant Vasquez noticed Plaintiff trying to get up and heard Plaintiff yelling obscenities. (Defendants' Exhibit C, ECF No. 37-3, at 10.) Defendant Vasquez ordered Plaintiff to stay down on the ground, and Plaintiff complied with that order. (Id.) Defendant Vasquez then ordered Defendant Razo to get leg restraints and place them on Plaintiff. (Id.) Defendant Razo obtained the leg restraints and placed them on Plaintiff while Plaintiff was lying on the ground. (Defendants' Exhibit E, ECF No. 37-3, Declaration of R. Razo, ¶ 5.) Defendant Razo made sure that the leg restraints were not too tight by putting a finger-spaced instance between Plaintiff's legs and the restraints, and then double-locked the restraints. (Id. at ¶ 7.) At no time did Plaintiff tell Defendant Razo that the leg restraints were too tight. (Id. at 8.)

Defendant Vasquez then ordered Defendants Athie and Garza to transition the handcuffs from the front of Plaintiff's body to the back. (UMF No. 19.) Defendant Athie held Plaintiff's left arm and placed Plaintiff's left hand into the handcuffs, while Defendant Garza placed Plaintiff's right hand into the handcuffs. (Defendants' Exhibit F, ECF No. 37-3, Declaration of P. Athie, ¶ 8.)

Defendant Athie made sure that the handcuffs were not too tight, and then Defendants Athie and Garza escorted Plaintiff to holding cell # 17. (Id. at ¶¶ 8-9.) At no time did Plaintiff complain to Defendant Athie that the handcuffs were too tight and Plaintiff did not ask that the handcuffs be loosened. (Id. at ¶ 10.)

With this evidence, Defendants have met their burden of proof in demonstrating that the force that they used on Plaintiff was not excessive under the circumstances. Therefore, the burden shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586. In attempting to establish the existence of this factual dispute, Plaintiff is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of his contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

Plaintiff's account of the incident on August 24, 2015 between Defendants Athie, Garza, Lopez, and Razo and himself is quite different from Defendants' account. Plaintiff asserts that, when Registered Nurse Barrios was interviewing Plaintiff about his medical health and medications, Nurse Barrios asked Plaintiff where Plaintiff's medicated lotion was. (Plaintiff's Exhibit 6, ECF No. 41, Deposition of Michael Jacques, 14:14-15:1.) Officer Gonzalez overheard the question and asked Defendant Lopez about the location of Plaintiff's lotion. (Id. at 15:4-6.) Defendant Lopez responded: "That ain't no medicated lotion. That's regular fucking lotion." (Id. at 15:6-9.) Plaintiff replied: "Well, that ain't no fuckin' regular lotion, that's fuckin' medicated lotion, you can tell, it's prescribed." (Id. at 15:12-14.) As Plaintiff finished with Nurse Barrios, the nurse asked Plaintiff to retrieve the lotion so that Nurse Barrios could document it if Plaintiff wanted to keep the lotion. (Id. at 15:15-20.)

When Plaintiff left the medical room to retrieve the lotion, Defendant Lopez told Plaintiff: "Who the fuck do you think you are?" (Id. at 15:23-24; see also Plaintiff's Complaint, ¶ 20[8].)

---

[8] Since Plaintiff is *pro se*, the Court must consider "as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). Since Plaintiff's Complaint is verified, the Court considers all facts alleged in the complaint that are based on Plaintiff's personal knowledge and that would be admissible as evidence in support of Plaintiff's opposition.

Plaintiff responded back: "Who the fuck do you think you are?" (Id. at 15:25-16:1.) Right as Plaintiff said that, Defendant Lopez struck Plaintiff twice on the right side of Plaintiff's face and once on the left side of Plaintiff's face. (Plaintiff's Deposition, at 16:1-13; Plaintiff's Complaint, ¶ 22.) Plaintiff never struck Defendant Lopez. (Plaintiff's Deposition, at 40:9-14.) Then, Defendant Lopez slammed Plaintiff on the ground. (Plaintiff's Deposition, at 16:14-16; Compl., ¶ 22.) Once Plaintiff was on the ground, Defendant Lopez started choking Plaintiff, while Plaintiff was moving around, wiggling and panicking, and trying to tell Defendant Lopez that he could not breathe. (Plaintiff's Deposition, at 16:16-25, 42:17-22; Compl., ¶ 23.) Once Defendant Lopez stopped choking Plaintiff, Defendant Lopez placed himself on Plaintiff's upper back. (Plaintiff's Deposition, at 17:1-4; Compl., ¶ 23.) Then, Plaintiff was stepped on, stomped on, kneed, and punched by Defendants Athie, Garza, and/or Razo, who Plaintiff identified as being present by incident reports. (Plaintiff's Deposition, at 17:4-13, 45:12-47:3, 69:10-23, 70:9-17; Compl., ¶ 24.) Defendant Vasquez was present while Plaintiff was being stepped on, kneed, and punched and, even though he had a realistic opportunity to prevent the beating, he did nothing to stop it. (Plaintiff's Deposition, at 45:19-46:8, 69:24-70:8; Compl., ¶ 24.)

Defendant Vasquez ordered Defendant Razo to receive leg restraints and to place them on Plaintiff. (UMF No. 18.) Defendant Razo placed the leg restraints on Plaintiff so tightly that the restraints restricted blood flow, cut into Plaintiff's skin, and caused Plaintiff's legs to become numb. (Plaintiff's Deposition, at 17:22-18:4; Compl., ¶ 24.) Plaintiff told Defendant Razo and the other Defendants present that the leg restraints were too tight. (Plaintiff's Deposition, at 49:1-6.) Defendant Vasquez also ordered Officers Athie and Garza to transition the handcuffs from the front of Plaintiff's body to the back. (UMF No. 19.) Defendant Athie took hold of Plaintiff's left hand, Defendant Garza took hold of Plaintiff's right hand, and Plaintiff's hands were moved to behind his back. (Compl., ¶ 24.) After the handcuff transition was completed, the handcuffs on Plaintiff's wrists were so tight that the handcuffs restricted Plaintiff's blood flow, cut into Plaintiff's skin, and caused Plaintiff's hands to go numb. (Id.; Plaintiff's Deposition, at 49:7-50:19.) At the time that the restraints were being placed on Plaintiff, Plaintiff was not resisting, was not moving, and was complying with all orders. (Plaintiff's Deposition, at 18:8-12.) Officers Garza and Athie then

escorted Plaintiff to a holding cell.  (UMF No. 20.)  Plaintiff told Officers Garza and Athie that the handcuffs were too tight and were cutting into his skin, but they did not respond to his comments. (Plaintiff's Deposition, at 18:20-25.)  The cuffs were on Plaintiff so tightly that one correctional officer could not undo the locks and it took Defendant Vasquez approximately five minutes to get the cuffs off of Plaintiff.  (Plaintiff's Deposition, at 22:10-23.)

While preparing the CDCR 7219 injury report, Nurse Barrios noted that Plaintiff had a cut to his mouth, a cut to his left wrist, and indentation marks on his wrists and ankles.  (UMF No. 22; Plaintiff's Deposition, at 19:1-20.)   While preparing the second CDCR 7219 injury report, Defendant Aro noted that Plaintiff had a cut, swollen, and bruised mouth, swelling to the right side of the head, the right groin area, and the left elbow, as well as a reddened area on the inside of his right arm.  (UMF No. 23.)  Plaintiff asserts that, due to Defendants' actions and/or inactions, he received injuries to the right side of his head, right earlobe, right and left sides of his mouth, the inside of his right arm, the inside of his right leg, left elbow, right and left wrists, right ankle, and his legs just above his right and left ankles.  (Compl., ¶¶ 36, 58.)  He also suffered dizziness and headaches.  (Compl., ¶ 52.)

Based upon this evidence, construed in favor of Plaintiff, the Court finds that Plaintiff has established genuine issues of material fact that prevent summary judgment in favor of Defendants. With regards to Defendant Lopez, Plaintiff has provided the Court with evidence to support his contention that Defendant Lopez struck him several times, slammed him to the ground, and choked him after Plaintiff and Defendant Lopez exchanged comments containing profanity with each other, but Plaintiff had not struck Defendant Lopez.  Therefore, Plaintiff has established genuine issues of material fact concerning whether there was actually a need for Defendant Lopez to use force on him, the relationship between that need for the application of force and the amount of force used, and the threat reasonably perceived by Defendant Lopez.

With regards to Defendants Athie, Garza, and Razo, Plaintiff has provided the Court with evidence to support his contention that Defendants Athie, Garza, and Razo assaulted him while he was face down on the ground and Defendant Lopez was sitting on top of him, that Defendants Athie and Garza failed to loosen the handcuffs after Plaintiff complained that the handcuffs were too

tight, and Defendant Razo failed to loosen the leg restraints after Plaintiff complained that the leg restraints were too tight. Therefore, Plaintiff has established genuine issues of material fact concerning the relationship between the need for Defendants Athie, Garza, and Razo to use force on Plaintiff and the amount of force that Defendants Athie, Garza, and Razo used on Plaintiff.

With regards to Defendant Vasquez, Plaintiff has provided the Court with evidence to support his contention that Defendant Vasquez was present when Defendants Athie, Garza, and Razo used excessive force on him and that Defendant Vasquez did not intervene in any way. Therefore, Plaintiff has established a genuine issue of material fact regarding whether Defendant Vasquez had a realistic opportunity to intervene while another Defendant was violating Plaintiff's constitutional rights, but failed to do so.

Finally, Defendants contend that Plaintiff's excessive force and failure to intervene claims are contradicted by Plaintiff's own injuries, which are consistent with their version of events. Defendants assert that Plaintiff's version of events would have resulted in far greater injuries than the injuries that Plaintiff suffered. However, the extent of a plaintiff's injuries is only one factor to be weighed in the excessive force analysis. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.") Further, this Court cannot say that, as a matter of law, Plaintiff's version of events is so implausible that no reasonable jury could believe it. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

Therefore, the Court finds that Defendants Athie, Garza, Lopez, Razo, and Vasquez are not entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment on Plaintiff's claims for excessive force and failure to intervene should be denied.

### 3. Deliberate Indifference to Serious Medical Needs

Defendant Aro contends that she is entitled to summary judgment on Plaintiff's claim for

18

deliberate indifference to his serious medical needs in violation of the Eighth Amendment because Plaintiff's injuries did not amount to a serious medical need and because she was not deliberately indifferent when she refused to provide Plaintiff with pain medication.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (citation omitted).

"A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citation and internal quotation marks omitted). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

The undisputed evidence before the Court is that Plaintiff had a cut to his mouth, a cut to his left wrist, indentation marks on his wrists and ankles, a cut, swollen, and bruised lip, swelling to the right side of his head, the right groin area, and the left elbow, as well as a reddened area on the inside of his right arm. (UMF Nos. 22, 23.) With this evidence, Defendant has met her burden of proof in demonstrating that Plaintiff had no serious medical need for her to respond to. Therefore, the burden shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita, 475 U.S. at 586.

Plaintiff has presented the Court with evidence that he had cuts inside of his mouth that bled, caused him to have pain when he tried to brush his teeth and eat, and caused him to not be

19

able to eat his full regular meals for at least a week. (Plaintiff's Exhibit 6, ECF No. 41, Deposition of Michael Jacques, at 23:5-9, 55:22-56:14, 67:9-68:5.) However, Plaintiff's evidence also establishes that the cuts in his mouth did not need stitches, that he never saw a doctor, or went to medical for treatment of the cuts in his mouth, that the cuts in his mouth healed within three and a half weeks, and that, while he was not able to eat his full meals during the first week after he was injured, he was still able to eat bread and other foods that did not cause stinging or irritation in his mouth. (Plaintiff's Deposition, at 54:23-55:22; 67:2-68:5.) Further, Plaintiff has failed to provide the Court with any evidence detailing the size and extent of any cuts, bruising, or swelling, any evidence that he was in substantial pain at any time relevant to his claim, any evidence of how long the cuts in his mouth continued to bleed or if any of his other cuts bled at any time and approximately how much the cuts bled, any evidence that he lost any weight due to his eating problems caused by the cuts in his mouth, or any evidence that the failure to treat his cuts, bruises, swelling, and pain caused him to suffer any further injury.

Therefore, considering the facts in the light most favorable to Plaintiff, Plaintiff's injuries do not rise to the level of an objectively significant or serious medical need that required treatment to avoid further serious injury or further significant pain. See Lockett v. Suardini, 526 F.3d 866, 877 (minor lacerations and cuts and soreness in two fingers were not sufficiently serious to rise to the level of an objective serious medical need); Dawes v. Coughlin, 159 F.3d 1346, 1998 WL 513944, at *1 (2d Cir. 1998) (1.5-inch laceration on elbow was not sufficiently serious to give rise to an Eighth Amendment claim); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (finding that a cut over one eye, a quarter-inch piece of glass embedded in plaintiff's palm, and bruises on shoulders and elbows did not amount to a serious medical need when the injuries did not require stitches or medicine); MacFalling v. Nettleton, No. CV 17-02399 SVW (AFM), 2017 WL 3498616, at *7 (C.D. Cal. Aug. 15, 2017) (determining that cuts, abrasions, and swollen hands resulting from overly tight handcuffs did not rise to level of a serious medical need); Telles v. Stanislaus County Sheriff's Dep't, No. 1:10-cv-01911-AWI-JLT, 2011 WL 2036962, at *5 (E.D. Cal. May 24, 2011) (stating that cuts and bruises were not a serious medical need where plaintiff failed to establish the severity of the injuries); and Jenkins v. McLaughlin, No. C 94-3961 FMS, 1995 WL 463673, at *4

20

(N.D. Cal. July 31, 1995) (finding that plaintiff failed to establish a serious medical need where, while plaintiff had approximately five missing teeth and chewing food might have been painful due to bleeding gums and cavities, there was no evidence that plaintiff could not eat or suffered any weight loss as a result of his dental condition), cf. Aldridge v. Montgomery, 753 F.2d 970, 971-73 (11th Cir. 1985) (holding that a 1.5-inch cut over a plaintiff's eye was a serious medical need where the cut bled for over two hours onto plaintiff's coat and shirt and created a pool of blood on the floor approximately the size of two hands, and required six stitches). Consequently, Plaintiff has failed to establish a genuine issue of material fact regarding whether Plaintiff had a serious medical need to which Defendant Aro failed to respond. Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for deliberate indifference to serious medical needs against Defendant Aro should be granted.

### 4. Qualified Immunity

Defendants Athie, Aro, Garza, Lopez, Razo, and Vasquez contend that they are entitled to qualified immunity because: (1) Defendants Athie, Garza, Lopez, Razo, and Vasquez did not violate Plaintiff's constitutional rights; and (2) Defendant Aro did not violate clearly established law and she reasonably believed that her conduct was lawful.

#### a. **Legal Standards**

"Qualified immunity shields public officials from civil damages for performance of discretionary functions. It is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Mueller v. Auker, 576 F.3d 979, 992 (9th Cir. 2009) (italics in original and citation omitted). "Qualified immunity shields a[ correctional] officer [or medical staff member] from suit when [they] make[] a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [they] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." Mueller, 576 F.3d at 993.

"In resolving questions of qualified immunity at summary judgment, courts engage in a

two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, … show the officer's conduct violated a [federal] right[.]'" <u>Tolan v. Cotton</u>, 572 U.S. 650, 655-56 (2014) (citation omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." <u>Id.</u> at 656 (citation omitted). In applying the qualified immunity doctrine, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

### b. Excessive Force and Failure to Intervene

Here, Defendants Athie, Garza, Lopez, Razo, and Vasquez argue that they are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights. However, first, the Court has already found that, viewing the facts in the light most favorable to Plaintiff, there are several genuine issues of material fact regarding whether Defendants Athie, Garza, Lopez, and Razo violated Plaintiff's Eighth Amendment right to be free from excessive force and whether Defendant Vasquez violated Plaintiff's Eighth Amendment rights by failing to intervene in Defendants' Athie's, Garza's, and Razo's use of excessive force. Therefore, the first prong of qualified immunity is not met.

Hence, the Court must reach the second prong of the qualified immunity analysis, i.e., whether the right in question was clearly established at the time of the violation. <u>Tolan</u>, 572 U.S. at 656. A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). Clearly established law should not be defined "at a high level of generality"; rather, it "must be particularized to the facts of the case." <u>White v. Pauly</u>, ____ U.S. ____, 137 S. Ct. 548, 552 (2017) (*per curiam*) (citation omitted). While this standard does not require "a case directly on point," <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011), courts typically should identify analogous cases, i.e., ones in which prison officials "acting under similar circumstances" violated the Eighth Amendment, <u>White</u>, 137 S. Ct. at 552. To be analogous, however, the case need not be "materially similar." <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).

In the Ninth Circuit, to assess whether a right is clearly established, courts first look to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." Cmty. House, Inc. v. City of Boise, 623 F.3d 945, 967 (9th Cir. 2010) (citation omitted). Absent binding precedent, courts should consider all relevant decisional law. Capoeman v. Reed, 754 F.2d 1512, 1514 (9th Cir. 1985). Unpublished circuit and district court decisions inform the analysis. Bahrampour v. Lampert, 356 F.3d 969, 977 (9th Cir. 2004); Krug v. Lutz, 329 F.3d 692, 699 (9th Cir. 2003).

With regards to Defendant Lopez, the Court finds that, as of August 24, 2015, it was clearly established to a reasonable correctional officer that punching an inmate in the face with closed fists, slamming the inmate to the floor, and then choking the inmate in response to the inmate's disrespectful and profane verbal conduct, but where the inmate had not refused to obey any commands and had not threatened or physically used force against the officer is excessive force. See Aubert v. Elijah, No. 1:07-cv-01629-LJO-GSA-PC, 2013 WL 789078, at *7 (E.D. Cal. Mar. 1, 2013) (stating that "a correctional officer would reasonably believe that responding to an inmate's verbal conduct by choking him and striking his face and head area with closed fists violates a clearly established right"), findings and recommendations adopted by Aubert v. Elijah, No. 1:07-cv-01629-AWI-GSA-PC, 2013 WL 1278499 (E.D. Cal. Mar. 26, 2013); see also Marlowe v. Pinal County, No. CV-06-1347-PHX-PGR, 2008 WL 4264724, at *9 (D. Ariz. Sept. 15, 2008) (stating that, as of April 25, 2005, "it was clearly established … that a suspect's verbally abusive and disrespectful attitude towards an officer does not justify the use of unnecessary force"). With regards to Defendants Athie, Garza, and Razo, the Court finds that, as of August 24, 2015, it was clearly established to a reasonable correctional officer that stomping, kneeing, kicking, and punching a prisoner who is lying prone and not actively resisting is excessive force and that applying overly tight handcuffs or leg restraints and refusing to loosen them when requested is also excessive force. See Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (affirming denial of qualified immunity on an excessive force claim where defendants unnecessarily fastened handcuffs so tightly around plaintiff's wrists that the handcuffs caused plaintiff pain and left bruises and where defendants refused to loosen the handcuffs after plaintiff complained of pain); Petrolino v. County of Spokane, 678 F. Supp. 2d 1082, 1093 (E.D. Wash. 2009) ("[O]n May 1, 2004, an objective

corrections officer arguably should have realized he may not use knee strikes to control a detainee who is neither threatening him, nor actively resisting him, nor intentionally disobeying his commands."); see also Underwood v. Northcutt, No. 1:08-cv-00986-GSA, 2015 WL 1404941, at *14 (E.D. Cal. Mar. 26, 2015) ("A reasonable officer would not stomp and kick in the ribs a prisoner who is lying prone with his hands out."). Finally, with regards to Defendant Vasquez, the Court finds that, as of August 24, 2015, it was clearly established that a reasonable correctional officer would know that failing to intervene while another officer used excessive force on a prisoner violated the prisoner's Eighth Amendment rights. See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (stating that "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene").

Further, as discussed above, the Court also finds that there are genuine disputes of material fact as to whether there was a need for application of force at all and whether the degree of force used was reasonable or excessive under the circumstances. Therefore, whether Defendants acted reasonably and under the belief that their conduct was lawful is a question which must be resolved by the trier of fact. For these reasons, Defendant Athie's, Garza's, Lopez's, Razo's, and Vasquez's motion for summary judgment on the issue of qualified immunity is denied.

### c. Deliberate Indifference to Serious Medical Needs

Defendant Aro asserts that the Court should grant summary judgment on the basis of qualified immunity. However, since the Court has found that the undisputed facts show that Plaintiff had no serious medical need in this case to which Defendant Aro failed to respond, the Court finds that there is no need to decide the issue of whether Defendant Aro is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

///

///

///

///

24

**IV.**

**RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.     Defendants Athie's, Garza's, Lopez's, Razo's, and Vasquez's motion for summary judgment on Plaintiff's claims for excessive force and failure to intervene in violation of the Eighth Amendment, (ECF No. 37), be denied;

2.     Defendant Aro's motion for summary judgment on Plaintiff's claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment, (ECF No. 37), be granted;

3.     This matter proceed only on Plaintiff's Eighth Amendment claims for excessive force against Defendants Athie, Garza, Lopez, and Razo, and for failure to intervene against Defendant Vasquez; and

4.     That judgment be entered in favor of Defendant Aro.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 2, 2019**                             

                            UNITED STATES MAGISTRATE JUDGE